# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

SHEILA VERANES MARTINEZ,

       Petitioner,

    v.                                                                      Case No. 2:26-cv-00611-KWR-KK

MARKWAYNE MULLIN, *Secretary of
the U.S. Department of Homeland Security*,
TODD BLANCHE, *Acting Attorney General of
the United States*, MARY DE ANDA-YBARRA,
*Field Office Director of the El Paso Field Office of
U.S. Immigration and Customs Enforcement,
Enforcement and Removal Operations*, and
DORA CASTRO, *Warden of the Otero County
Processing Center*, *in their official capacities*,

       Respondents.

## ORDER GRANTING IN PART HABEAS PETITION

**THIS MATTER** comes before the Court on Petitioner's Petition for Writ of Habeas

Corpus (**Doc. 1**) and Petitioner's Emergency Motion for Temporary Restraining Order (**Doc. 6**).

Petitioner is a noncitizen detained by U.S. Immigration and Customs Enforcement. Petitioner

asserts that she is entitled to a bond hearing under 8 U.S.C. § 1226(a). Respondents assert that she

is mandatorily detained under 8 U.S.C. § 1225(b)(2)(A). As explained below, the Court finds that

Petitioner is due a bond hearing pursuant to § 1226(a).

Having reviewed the parties' pleadings and the relevant law, the Court finds that the

Petition is well-taken and therefore is **GRANTED in part**. The Court orders Respondents to hold

an individualized bond hearing for Petitioner within five (5) days of the entry of this order.

## BACKGROUND

Petitioner Sheila Veranes Martinez is a citizen of Cuba who entered the United States at a port of entry on September 29, 2024.  Pet. ¶¶ 1, 22–23, Doc. 1.  That day, she was inspected, paroled through CBP One, and given a Notice to Appear ("NTA"). Pet. ¶ 23. The NTA was issued pursuant to section 240 of the Immigration and Nationality Act ("INA"). Doc. 1-3 at 4 (NTA).

While released on parole, Petitioner complied with all reporting requirements and appeared for immigration hearings. Pet. ¶ 25. After one year of physical presence, she timely applied to become a lawful permanent resident under the Cuban Adjustment Act ("CAA"), Pub. L. 89-732. *Id.* ¶ 26.

On January 14, 2026, Petitioner appeared in person before an immigration judge. *Id.* ¶ 27. There, the Department of Homeland Security ("DHS") moved to dismiss the NTA issued against Petitioner so that DHS could place Petitioner in expedited removal proceedings. *Id.* ¶ 28. Shortly after the immigration judge denied DHS's motion, DHS revoked Petitioner's parole, arrested her, and took her into custody. *Id.* ¶¶ 29–30; Doc. 14-1 (Arrest Warrant). The arrest warrant was issued pursuant to section 236 of the INA (codified at 8 U.S.C. § 1226). Doc. 14-1.

In February 2026, an immigration judge denied Petitioner's request for administrative closure in part because the immigration judge did not have authority to release Petitioner, who was classified as an "arriving alien." Doc. 1-3 at 13 (IJ Order). On September 5, 2025, the Board of Immigration Appeals issued a decision holding that immigration judges lacked authority or jurisdiction to consider bond requests for any person who entered the United States without admission. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 225 (BIA 2025) ("Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission.").

Since January 2026, Petitioner has remained detained without a bond hearing because DHS asserts that Petitioner is an "arriving alien" and subject to mandatory detention under 8 U.S.C. § 1225(b). Pet. ¶ 32. As of the date of the Petition, Petitioner is detained at the Otero County Processing Center in New Mexico. *Id.* ¶ 31.

Before Respondents filed their response to the Petition, Petitioner filed an emergency motion for temporary restraining order, seeking release on the same or similar grounds as in her Petition. Doc. 6. In response to the Court's order for briefing, Petitioner reported to the Court that she had been informed that a final removal hearing had been scheduled for March 2026, prompting the emergency motion. Doc. 12 at 1. However, the removal hearing had been rescheduled for May 2026, and Petitioner acknowledged that the rescheduling lessened the immediacy of a decision by the Court. *Id.*

In sum, Petitioner asserts that she has remained in federal immigration custody without an opportunity to post bond or request a conditional release because her detention has been classified as mandatory under 8 U.S.C. § 1225(b). Petitioner requests that the Court issue a writ of habeas corpus requiring Respondents to (1) release Petitioner or (2) conduct an individualized bond hearing.

## LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art I, § 9, cl. 2). A federal court may grant a writ of habeas corpus to a petitioner who demonstrates that she is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A challenge to immigration detention is "properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

**DISCUSSION**

In her § 2241 habeas petition, Petitioner asserts that, by arresting her and subjecting her to mandatory detention, Respondents are acting in excess of their statutory authority under the INA and the CAA and violating her constitutional right to due process and the separation of powers doctrine. Pet. ¶¶ 57–86. Respondents claim that Petitioner is properly detained pursuant to § 1225(b) and is not entitled to a bond hearing.[1] Doc. 11 at 5. The Court disagrees with Respondents; since Respondents treated Petitioner as subject to § 1226(a) when DHS arrested her, they cannot now claim that she is detained pursuant to § 1225(b)(2)(A). Accordingly, Petitioner is detained pursuant to § 1226(a) and is entitled to an individualized bond hearing before an immigration judge.

**I.    The discretionary provisions under § 1226(a) apply to Petitioner, rather than the mandatory detention provisions under § 1225(b)(2)(A).**

Respondents assert that Petitioner is subject to mandatory detention pursuant to § 1225(b)(2)(A) because Petitioner was returned to her original status under § 1225 once her parole was revoked at the time of her arrest. Doc. 11 at 5. But Respondents provide no evidence that § 1225 still applies to Petitioner. Rather, the evidence demonstrates that her detention is governed by § 1226.

In September 2024, Petitioner was placed in removal proceedings pursuant to section 240 of the INA (codified at 8 U.S.C.§ 1229a). Doc. 1-3 at 4. At the same time, Petitioner was granted parole pursuant to 8 U.S.C. §1182. *Id.* Applicants for admission may be released on parole on a "case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). Once the DHS determines that the parole's purpose has been achieved, "the alien

---

[1] Respondents believe that Petitioner is detained under § 1225(b)(2). *See* Doc. 11 at 2. Thus, the Court declines to *sua sponte* raise administration exhaustion or detention under § 1225(b)(1).

4

shall forthwith return or be returned *to the custody from which he was paroled* and thereafter shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.* (emphasis added).

Respondents argue that Petitioner is an "'arriving alien' by virtue of her parole revocation," and thus subject to mandatory detention under § 1225(b)(A)(2). Doc. 11 at 5. But, as Petitioner points out, Respondents treated Petitioner as subject to § 1226 when they arrested her in January 2026. *See id.* at 2; Doc. 12 at 4. And the arrest warrant filed by Respondents clearly shows that Petitioner was arrested on a warrant issued under § 1226. Doc. 14-1. Thus, the Court finds that, when Petitioner was detained in January 2026, she was returned to custody subject to the discretionary detention procedures under § 1226(a).[2]

Since Petitioner's arrest was authorized by § 1226(a), Petitioner cannot now be detained under § 1225(b)(2)(A). *See Matter of M-S-*, 27 I. & N. Dec. 509, 516 (Att'y Gen. 2019) ("Yet [§ 1225] (under which detention is mandatory) and [§ 1226(a)] (under which detention is permissive) can be reconciled only if they apply to different classes of aliens."); *see also Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 485 (S.D.N.Y. 2025) (noting that the respondents did not "dispute that [§§ 1225 and 1226] . . . are mutually exclusive").

Therefore, because Petitioner's detention is governed by § 1226(a), the Court will grant in part the Petition.

---

[2] Further, consistent with the Court's previous findings, the Court rejects any argument that Petitioner is detained pursuant to §1225(b) based on a broad interpretation of §1225(b) that classifies Petitioner as a noncitizen "seeking admission." As the Court has repeatedly explained in prior opinions, which the Court adopts and incorporates herein, the statutory phrase "seeking admission" cannot be interpreted to apply to Petitioner, who has lived in the United States for well over a year. *See Barry v. Lyons*, No. 1:26-CV-00504-KWR-KRS, 2026 WL 926218, at *2–5 (D.N.M. Apr. 6, 2026); *Abdikadir v. Mullin*, No. 1:26-CV-00634 KWR-JMR, 2026 WL 895661, at *2–6 (D.N.M. Apr. 1, 2026).

**II.**    **The Court finds that a bond hearing, rather than immediate release, is the appropriate remedy.**

Petitioner requests that the Court order immediate release or, alternatively, a bond hearing. Pet. ¶ 88. Petitioner further requests that, at the hearing, the Government bear the burden of proof by clear and convincing evidence, and the immigration judge consider detention alternatives. *Id.* ¶ 90. In accordance with the burden of proof in habeas matters and the principles of party presentation, the Court declines to immediately release Petitioner or shift the burden to Respondents at her hearing. In the Court's discretion, the Court will order an individualized bond hearing pursuant to § 1226(a).

Petitioner bears the burden of proof to demonstrate that she is entitled to relief or a remedy, including whether the burden should be placed on Respondents to justify her detention at a bond hearing. *See* 28 U.S.C. § 2241; *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) ("[I]t was error for the District Court to effectively impose on the Government the burden of proving that [a petitioner] was not 'in custody in violation of the Constitution or laws or treaties of the United States.'" (citing § 2241(c)(3)); *Odell v. Hudspeth*, 189 F.2d 300, 302 (10th Cir. 1951) (finding that, in a § 2241 proceeding, "[t]he burden of proof was upon the petitioner to sustain these allegations"). Petitioner also bears the burden to demonstrate a "deprivation of rights leading to unlawful detention" under § 2241. *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009); *see also Smith v. Workman*, 550 F.3d 1258, 1273 (10th Cir. 2008) (noting that, in the context of a *Brady* violation, the petitioner "bears the burden of showing that the prosecution suppressed material evidence favorable" to the petitioner).

Section 1226(a) gives Respondents discretion to detain, release on bond, or parole a noncitizen. Notably, this section does not expressly provide a statutory right to immediate release. The release or bond decision by an immigration judge usually involves the weighing of evidence

and is discretionary. § 1226(a); *Jennings*, 583 U.S. at 295. Such discretionary decisions are generally not reviewable. 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."); *see also Mwangi v. Terry*, 465 F. App'x 784, 787 (10th Cir. 2012) ("[T]o the extent [the petitioner] challenges the agency's discretionary bond decision, the magistrate judge was correct that the court lacked jurisdiction.").

To be sure, federal district courts have broad equitable powers in ordering habeas relief. *Burton v. Johnson*, 975 F. 2d 690, 693 (10th Cir. 1992). A federal court is vested with "the largest power to control and direct the form of judgment to be entered in cases brought up before it on *habeas corpus*." *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987). In issuing a writ of habeas corpus, a federal court has the power and authority to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243; *see also Clayton v. Jones*, 700 F.3d 435, 443 (10th Cir. 2012) (noting that § 2243 gives district courts "broad discretion to craft appropriate habeas relief").

Here, the Court in its discretion would order a bond hearing, as an individualized bond hearing would provide Petitioner with the process she is due under the statute. *See* § 1226(a) (providing that the Attorney General may continue to detain a noncitizens pending a decision on removal or may release the noncitizen on bond or parole); *see also Martinez Escobar v. Baltazar*, No. 26-CV-00296-NYW, 2026 WL 503313, at *4 (D. Colo. Feb. 24, 2026) (ordering bond hearing rather than immediate release where due process rights were violated by respondents' failure to apply § 1226(a) discretionary detention provisions); *Gutierrez v. Garcia*, No. 2:25-CV-001145-WJ-KRS, 2026 WL 310064, at *5 (D.N.M. Feb. 5, 2026) (noting that process due is an individualized bond hearing); *Velasquez Salazar v. Dedos*, No. 1:25-cv-835, 2025 WL 2676729, at *5 (D.N.M. Sep. 17, 2025) ("Because . . . § 1226 governs Petitioner's detention, the due process

7

owed to Petitioner is that provided for in § 1226—namely, an individualized bond hearing before an IJ."). Accordingly, the Court finds that the proper remedy is an individualized bond hearing pursuant to § 1226(a).

Petitioner also does not argue or demonstrate in her Petition that any statutory, due process, or constitutional violation required her release. She does not cite any standard or law the Court should apply in deciding whether a due process violation requires her release. For example, should the Court apply the *Mathews* test in determining whether she should be immediately released, and if so, how does the *Mathews* test apply to the facts of this case to warrant her immediate release? The Court therefore declines to *sua sponte* analyze whether her other claims require her release over a bond hearing, as these issues were not properly argued or presented to the Court. *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself."); *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (observing that a court has no obligation to make arguments or perform research on behalf of litigants) (quoting *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir.1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. [The court] will not do his research for him."). The principle of party presentation is particularly appropriate here, where this district court is overwhelmed with habeas petitions, and petitioners request that the Court rule immediately. If the Court were to act as Petitioner's counsel and make arguments or do research on her behalf, it would prejudice other petitioners by delaying a ruling on their petitions. Therefore, Petitioner has not properly placed before the Court the issue of whether she must be immediately released, or she has not carried her burden.

For the first time in her reply, Petitioner argued that the improper revocation of her parole requires her release. Doc. 12 at 2. But she did not assert that claim in her Petition and did not argue that such claim required her release. Petitioner may not raise new arguments in her reply. *Geringer v. Strong*, 766 F. App'x 620, 625 (10th Cir. 2019); *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) (the general rule in this circuit "is that a party waives issues and arguments raised for the first time in a reply brief."). Moreover, Petitioner does not argue or explain why the Court should shift the burden to Respondents on the issues of flight and dangerousness at the bond hearing or why the Court should require that the immigration judge consider alternatives to detention, and the Court declines to *sua sponte* analyze these issues.

Thus, the Court will order that Respondents hold a bond hearing within five (5) days of the entry of this order.

**III.     This opinion and the judgment should not be construed as addressing detention under § 1231, if that provision becomes applicable.**

The Petition presented the Court with a narrow issue, whether Petitioner's detention *pending a decision on removal* is governed by § 1225 or § 1226.  Once an order of removal has become final, the authority governing a noncitizen's detention shifts to another statutory provision, 8 U.S.C. § 1231(a)(2). *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 574 (2022) ("After the entry of a final order of removal against a noncitizen, the Government generally must secure the noncitizen's removal during a 90-day removal period, during which the Government 'shall' detain the noncitizen.") (citing 8 U.S.C. § 1231(a)(1), (2)).

Section 1231 governs the detention of noncitizens "during" and "beyond" the "removal period." § 1231(a)(2)–(6).  In general, when a noncitizen is ordered removed, the Attorney General shall remove them within 90 days, known as the "removal period."  § 1231(a)(1)(A). The "removal period" begins once a noncitizen's removal order "becomes administratively final," §

9

1231(a)(1)(B), meaning the order has been affirmed by the BIA or the time for seeking review has expired, 8 U.S.C. § 1101(a)(47)(B). *Riley v. Bondi*, 606 U.S. 259, 267 (2025) ("An order of removal becomes final at the earlier of two points: (1) 'a determination by the [BIA] affirming such order,' or (2) 'the expiration of the period in which the alien is permitted to' petition the BIA for review of the order.'") (citation omitted).  During the removal period, detention is mandatory. § 1231(a)(2).

Here, no party has asserted that § 1231 applies. Therefore, as of the entry of this order, it appears that the Court retains the ability to order the relief requested in the Petition, *i.e.*, to determine whether §§ 1225 or 1226 applies to her detention pending a decision on removal. The Court's order and judgment should not be construed to opine on whether or when in the future Petitioner may be detained under § 1231.

## IV.    The Court need not rule on Petitioner's remaining claims.

Because the Court grants habeas relief, the Court need not address her other claims or enter a declaration. *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004) (finding it unnecessary to address an additional claim in a habeas petition after granting full relief on one claim because "any relief [petitioner] could obtain on that claim would be cumulative."); *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) (stating that "[a] fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."); *Scott v. Mullin*, 303 F.3d 1222, 1224 (10th Cir. 2002) (declining to address the remaining claims in a habeas petition after already granting habeas relief on one claim). As explained above, Petitioner has not demonstrated that any due process violation entitles her to release over a bond hearing. Therefore, she has received all relief to which she is entitled.

**CONCLUSION**

The Court concludes that Petitioner's detention pending a decision on whether she should be removed from the United States is governed by § 1226(a) as opposed to § 1225(b). Petitioner did not adequately present the argument, or meet her burden demonstrating, that she is entitled to anything more than a bond hearing pursuant to § 1226(a). Accordingly, the Petition (Doc. 1) is granted in part. Respondents are directed to arrange individualized bond hearings pursuant to § 1226(a) for Petitioner before an immigration judge within **five (5) days** of the entry of this order. The parties are ordered to file a status report within **seven days** of the entry of this order. The Court will enter a separate judgment.[3]

**IT IS THEREFORE ORDERED** that Petitioner's Petition (Doc. 1) is hereby **GRANTED in part and DENIED in part** for the reasons described in this Memorandum Opinion and Order. Petitioner's Emergency Motion for Temporary Restraining Order (Doc. 6) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Respondents shall provide a bond hearing before an immigration judge for Petitioner pursuant to § 1226(a), as opposed to § 1225(b), within **five (5) days** of the entry of this order, provided that the Court makes no determination whether or when in the future § 1231 detention provisions may apply.

**IT IS FINALLY ORDERED** that the parties are directed to file a joint status report within **seven (7) days** of the entry of this order.

_____/S/_____

KEA W. RIGGS

UNITED STATES DISTRICT JUDGE

---

[3] The Court need not delay entry of judgment to wait for Respondents to comply with the Court's order. The Court "always retains jurisdiction to enforce its lawful judgments, including habeas judgments." *Gall v. Scroggy*, 603 F.3d 346, 352 (6th Cir. 2010); *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992) (explaining that district court has authority to enforce its habeas judgment).